IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| KALEB FREEMAN, <br><br> Plaintiff, <br><br> v. <br><br> WEXFORD HEALTH SOURCES, INC., <br> MOLDENHAUR, <br> ANGELA CRAIN, <br> BACKSTAR, <br> DILDAY, <br> BECKMON, <br> WALL, <br> NIKKI, and <br> DEARMON, <br><br> Defendants. | Case No. 25-cv-00310-SPM |

## MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

Plaintiff Kaleb Freeman, an inmate in the custody of the Illinois Department of Corrections who is currently incarcerated at Western Illinois Correctional Center, brings this civil action pursuant to 42 U.S.C. §1983 for violations of his constitutional rights that occurred at Menard Correctional Center. The First Amended Complaint is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A. Under Section 1915A, any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or requests money damages from a defendant who by law is immune from such relief must be dismissed. *See* 28 U.S.C. § 1915A(b).

THE FIRST AMENDED COMPLAINT

Plaintiff alleges the following: In early 2021, while at Menard Correctional Center (Menard), he began experiencing severe pain in his left groin/hip area. (Doc. 13, p. 2). On April

10, 2021, he spoke to several nurses and explained that he was having pain from a bump in his groin area. Plaintiff continued to complain of pain for the following three days and submit sick call requests. On April 13, 2021, he was finally called to "nurse sick call" for an appointment. During his appointment, he again stated that he was having pain in his left groin/hip area. The nurse referred him to the "MD/NP call line" and told him to stop exercising. Plaintiff was not given any pain medication and was sent back to his housing unit. (*Id.*).

Plaintiff had an appointment with Nurse Practitioner Dearmon on May 4, 2021. (Doc. 13, p. 3). Dearmon told Plaintiff that his pain was mild and that she was not going to give him any pain medicine because a "baby can tolerate this type of pain." (*Id.*).

On May 11, 2021, an ultrasound was approved, and Plaintiff received the ultrasound on May 21, 2021. (Doc. 13, p. 3). Plaintiff's medical records state that he was diagnosed with a left inguinal hernia on May 20, 2021, at nurse sick call. Plaintiff states that this is impossible since the ultrasound was not until May 21. (*Id.*).

Plaintiff was seen at nurse sick call on June 14, 2021, and August 2, 2021, and was not given any medication for the "known hernia." (Doc. 13, p. 3). He was again referred to the MD/NP call line. (*Id.*). After several requests, Nurse Practitioner Moldenhauer gave Plaintiff Colace and Tylenol. (*Id.* at p. 4).

For over a year Plaintiff continued to complain to medical staff and to the warden about his painful hernia, which was limiting his daily activities, but he did not receive treatment. (Doc. 13, p. 4).

On February 12, 2023, Plaintiff spoke to Correctional Officer Backstar and told Backstar about the pain he was experiencing because of the hernia. (Doc. 13, p. 4). Plaintiff informed Backstar that he was supposed to have surgery. Backstar respond, "Since you called your mommy you need to man up, and quit being a momm[y's] boy." Backstar walked away from Plaintiff

without trying to assist him in receiving medical care. (*Id.*).

The next day, Correctional Officer Beckmon told Plaintiff that Plaintiff had a pass to go to the healthcare unit for an appointment but since Plaintiff had "called [his] mommy" on Beckmon's colleague, Plaintiff was not going. (Doc. 13, p. 4). Beckmon stated, "I don't care how much pain you are in." Plaintiff spoke to another correctional officer, and eventually, he was taken to the healthcare unit. When Plaintiff arrived, however, he was told that he did not have an appointment. Plaintiff states that because Beckmon did not originally send him, he did not receive medication or treatment. (*Id.*).

On February 15, 2023, Plaintiff spoke to a nurse named Nikki about his hernia. (Doc. 13, p. 4). Nikki responded, "You still whining about that bump?" Nikki did not provide Plaintiff with any medical care. (*Id.*).

On February 21, 2023, Plaintiff received surgery for his hernia. (Doc. 13, p. 5). When Plaintiff returned to Menard following surgery, he was placed in the healthcare unit. In the healthcare unit, Correctional Officer Walls prevented the nurse from providing Plaintiff with his prescribed pain medication and antibiotics. Walls told Plaintiff to "sit there and suffer." Plaintiff was released the next day and transferred back to his cell without medication. (*Id.*).

On February 22, 2023, Dilday came by Plaintiff's cell, and Plaintiff informed Dilday that he had not received his prescribed medication. (Doc. 13, p. 5). Dilday told Plaintiff, "You still crying like a baby, some people would be grateful to get free health services," and walked away. (*Id.*).

**DISCUSSION**

Based on Plaintiff's allegations and his articulation of his claims, the Court designates the following counts:

**Count 1:**   Eighth Amendment claim against Moldenhaur, Crain, Backstar,

|  |  |
|---|---|
|  | Dilday, Beckmon, Wall, Nikki, and Dearmon for deliberate indifference to Plaintiff's serious medical needs, a hernia and associated pain. |
| **Count 2:** | Eighth Amendment claim against Wexford for maintaining a policy of understaffing which resulted in delayed medical care for Plaintiff's hernia and associated pain. |
| **Count 3:** | First Amendment claim against Backstar and Beckmon for retaliating against Plaintiff because he complained about Menard staff. |

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the First Amended Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly*[1] pleading standard.**

### Count 1

To state a claim for deliberate indifference, an inmate must put forward facts implicating both an objective and subjective element, "namely that: (1) an objectively serious medical need was deprived: and (2) the official knew that the risk of injury was substantial but nevertheless failed to take reasonable measures to prevent it." See *Chapman v. Keltner*, 241 F.3d 842 845 (7th Cir. 2001) (citing *Henderson v. Sheahan,* 196 F.3d 839, 845 (7th Cir. 1999)). *See also Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011). When determining whether prison officials have been deliberately indifferent to an inmate's serious medical needs, courts should consider the totality of the received medical care. See *Walker v. Peters*, 233 F.3d 494, 501 (7th Cir. 2000).

Plaintiff has failed to state an Eighth Amendment claim against Nurse Practitioner Dearmon. In the First Amended Complaint, Dearmon treated Plaintiff on a single occasion, May 4, 2021, about three weeks after he first started to experience groin pain. (Doc. 13, p. 3). During

---

[1] *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007).

the appointment, Deamon examined Plaintiff and submitted a request for Plaintiff to receive an ultrasound. Dearmon assessed Plaintiff's pain as mild and denied his request for pain medication. She also was rude to Plaintiff during the appointment and told him to "suck it up." (*Id.*).

While Dearmon was unprofessional in the comments she made to Plaintiff, her refusal to provide pain medicine on a single occasion does not rise to the level of deliberate indifference. Plaintiff does not allege that he had any additional appointments with Dearmon or that he communicated with her in anyway following the appointment on May 4, 2021. This limited interaction in the early stages of his condition does "not give rise to a plausible claim" that Dearmon knew that Plaintiff's hernia and pain continued to go untreated despite worsening symptoms. *Owens v. Duncan,* 788 F. App'x 371, 374 (7th Cir. 2019) (plaintiff had failed to state a claim by alleging that he was denied pain medication twice by two different employees) (citing *Perez v. Fenoglio,* 792 F.3d 768, 780 (7th Cir. 2015); *Gutierrez v. Peters,* 111 F.3d 1364, 1375 (7th Cir. 1997)). Accordingly, Count 1 is dismissed as to Dearmon.

Count 1 will proceed against Correctional Officers Backstar and Beckmon. When Plaintiff spoke with Backstar in February 2023, Plaintiff had received minimal to no treatment for his hernia and associated pain for over a year. He informed Backstar about his ongoing pain caused by his hernia, and Backstar refused to assist him in receiving care. The following day, Backmon actively prevented Plaintiff from attending a medical appointment resulting in Plaintiff not receiving pain medication or treatment. These allegations are sufficient for Count 1 to proceed against Backstar and Beckmon. *See Bentz v. Ghosh,* 718 F. App'x 413, 419 (7th Cir. 2017) ("[a] prisoner states an Eighth Amendment claim against nonmedical prison officials if he alleges that they recklessly disregarded a substantial risk of serious pain to the prisoner." (citing *Gomez v. Randle,* 680 F. 3d 859, 865-66 (7th Cir. 2012)).

Count 1 will proceed against Healthcare Administrator Crain, Nurse Practitioner

Moldenhauer, and Nurse Nikki. Plaintiff asserts that these individuals were fully aware that he was not receiving adequate and timely medical treatment for his inguinal hernia and associated pain due to the "numerous formal and informal complaints" he wrote seeking assistance. (Doc. 13, p. 6). Furthermore, Plaintiff asserts that after several requests, at some point, Moldenhauer eventually dispensed Tylenol and Colace, and he personally spoke with Nikki, a week before his surgery about his ongoing pain, and she did not take any action. (*Id.* at p. 4). Ignoring an inmate's complaints of pain or delaying necessary treatment can amount to deliberate indifference, particularly where the delay "exacerbates the plaintiff's condition or unnecessarily prolongs suffering." *Goodloe v. Sood*, 947 F.3d 1026, 1031 (7th Cir. 2020) (citations and internal quotation marks omitted). Accordingly, Count 1 will proceed against Moldenhauer, Crain, and Nikki.

Count 1 will also proceed against Correctional Officers Dilday and Wall, who denied Plaintiff his medication following his hernia repair surgery. (*See* Doc. 13, p. 5).

**Count 2**

Plaintiff asserts that Wexford Health Sources, Inc. (Wexford) "has a widespread practice of under staffing Menard, causing delay in treatment and promoting further harm to individuals in custody." (Doc. 13, p. 8). Plaintiff does not, however, adequately allege that the understaffing caused the harm he complains of, namely delayed and denied care for his hernia and associated pain. The First Amended Complaint is devoid of details from which the Court can plausibly infer that Plaintiff was forced to wait almost two years from his hernia diagnosis to receive surgery and was not provided pain medication in the meantime because there were an insufficient number of medical staff members at Menard. Rather, he repeatedly states that when he sought medical care, the staff members he communicated with either denied or ignored his requests for pain medication or a medical appointment. Because the Court finds his allegation that a policy of understaffing caused his constitutionally deficient medical care conclusory, he will not be able to proceed on an

Eighth Amendment claim based on this theory of relief against Wexford. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (finding that a complaint must describe "more than a sheer possibility that a defendant has acted unlawfully"); *Bell Atlantic Corp.*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level."). Count 2 is dismissed.

### Count 3

Plaintiff claims that Backstar and Beckmon refused to assist him in receiving medical care and medication because he had previously called his mother and complained about their "colleague." (Doc. 13, p. 4). This is sufficient to state a retaliation claim, and Count 3 will proceed against Backstar and Beckmon. *Kidwell v. Eisenhauer,* 679 F.3d 957, 965 (7th Cir. 2012) (discussing the elements of a retaliation claim).

### MOTION FOR RECRUITMENT OF COUNSEL

Plaintiff has also filed a Motion for Recruitment of Counsel (Doc. 8) which is **DENIED**. Pursuant to 28 U.S.C. § 1915(e)(1), the Court "may request an attorney to represent any person unable to afford counsel." When faced with a motion for recruitment of counsel the Court applies a two-part test: "(1) has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so; and if so, (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself?" *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007).

Plaintiff states that he has attempted to request counsel but that he not received any responses. (Doc. 8, p. 1). This is not sufficient information for the Court to determine that he has made a reasonable effort to obtain counsel on his own, and so, Plaintiff has failed to meet his threshold burden of making a "reasonable attempt" to secure counsel. See *Santiago v. Walls*, 599 F.3d 749, 760 (7th Cir. 2010). Should Plaintiff choose to move for recruitment of counsel at a later date, the Court directs Plaintiff to include in the motion the names and address of at least three attorneys he has contacted, and if available, attach the letters from the attorneys who declined

representation.

## DISPOSITION

For the reasons set forth above, the First Amended Complaint survives preliminary review pursuant to Section 1915A. **COUNT 1** shall proceed against Moldenhaur, Crain, Backstar, Dilday, Beckmon, Wall, and Nikki and is **DISMISSED without prejudice** as to Dearmon. **COUNT 2** is **DISMISSED without prejudice**. **COUNT 3** shall proceed against Beckmon and Backstar. Because there are no surviving claims against Wexford Health Sources, Inc. and Dearmon, they shall be **TERMINATED** as defendants on the docket.

The Clerk of Court is **DIRECTED** to **ENTER** the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

The Clerk of Court **SHALL** prepare for Defendants Moldenhaur, Crain, Backstar, Dilday, Beckmon, Wall, and Nikki the following: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the First Amended Complaint, and this Memorandum and Order to each defendant's place of employment. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on the defendant, and the Court will require the defendant pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a defendant can no longer be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, his last known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the

Clerk.

Defendants are **ORDERED** to file an appropriate responsive pleading to the First Amended Complaint in a timely manner and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244, Defendants only need to respond to the issues stated in this Merit Review Order.**

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and (if applicable) his or her attorney were deemed to have entered into a stipulation that any unpaid costs taxed against the applicant shall be paid from any recovery secured in this action.

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than 14 days after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED:   October 3, 2025**

                                                   *s/Stephen P. McGlynn*
                                                   **STEPHEN P. MCGLYNN**
                                                   **United States District Judge**

**NOTICE TO PLAINTIFF**

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take **90 days** or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.